UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Nicole Hall,                                                    Case No. 3:15-cv-00475

                Plaintiff,

    v.                                                        MEMORANDUM OPINION
                                                AND ORDER

Yark Automotive Group, Inc., et al.,

                Defendants.


## I.      INTRODUCTION

Defendants Yark Automotive Group and Shane Snyder seek dismissal of Plaintiff Nicole Hall's claims against them pursuant to Rule 12(b)(6).  (Doc. No.19).  Hall filed a brief in opposition. (Doc. No. 20).  Yark and Snyder filed a brief in reply.  (Doc. No.21).  Subsequently, Hall filed a motion to amend her complaint.  (Doc. No. 23).  Yark and Snyder oppose that motion.  (Doc. No. 24).  Hall did not file a reply to Yark and Snyder's opposition.  For the reasons stated below, Yark and Snyder's motion to dismiss is granted, and Hall's motion to amend her complaint is denied.

## II.      STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations.  *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Factual allegations must be sufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  Legal conclusions and unwarranted factual

inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If a party seeks to amend its pleading more than 21 days after service of a Rule 12(b) motion, the party must obtain "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). Leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989).

### III.    BACKGROUND

In October 2013, Hall spoke with Snyder about purchasing a used vehicle. Though she was on a fixed income of $349 per month, Hall alleges Snyder induced her to lease a 2014 Dodge Ram, with monthly payments in excess of $500. (Doc. No. 1 at 4-5). Hall states Yark and Snyder arranged for her to obtain a loan from Defendant Chrysler Capitol to finance the transaction. (Doc. No. 1 at 4). She made the payments for several months with financial assistance from friends before informing Chrysler Capitol she would default on the loan and allowing Chrysler Capitol to repossess the vehicle. (Doc. No. 1 at 5). Hall filed suit on March 11, 2015, asserting claims under the Truth in Lending Act ("TILA") and the Credit Repair Organization Act ("CROA").

After Yark and Snyder filed their motion to dismiss, Hall filed a motion to amend her complaint. (Doc. No. 23). Hall proposes to withdraw her TILA claim, conceding it is barred by the statute of limitations, and to add claims under the Fair Credit Reporting Act ("FCRA") and the Ohio Consumer Sales Practices Act. (Doc. No. 23-1).

## IV.     ANALYSIS

### A.  THE TRUTH IN LENDING ACT

Yark and Snyder argue Hall's TILA claim should be dismissed because she filed it outside of the applicable limitations period.  Generally, plaintiffs must bring TILA claims "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  Hall has not complied with this provision, as she brought her claim approximately 18 months after the alleged violation occurred.  (*See* Doc. No. 1).  Hall concedes her TILA claim is untimely and is subject to dismissal. (Doc. No. 23 at 2).  Yark and Snyder's motion to dismiss Hall's TILA claim is granted.

### B.  THE CREDIT REPAIR ORGANIZATIONS ACT

Yark and Snyder argue Hall's CROA claim should be dismissed because Yark and Snyder are not credit repair organizations under the statute.  Hall alleges Yark and Snyder violated 15 U.S.C. § 1679b "by filing and inducing [her] to file untrue loan applications with respect to [her] creditworthiness to loan provider Chrysler Capital . . . ." (Doc. No. 1 at 5).  Section 1679b(a) states:

> No person may make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to . . . (B) any person . . . (ii) to whom the consumer has applied or is applying for an extension of credit . . . .

15 U.S.C. § 1679b(a)(1).  I conclude Yark and Snyder have carried their burden and grant their motion to dismiss.

Though the Sixth Circuit has not addressed this issue, other circuit courts of appeal have held a defendant must meet the CROA's definition of a credit repair organization before the defendant can be liable under the statute. *See Zimmerman v. Puccio*, 613 F.3d 60, 71 (1st Cir. 2010) (defendant must perform the services of a credit repair organization); *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2001) (Defendant was required to comply with the CROA because he met the statute's definition of a credit repair organization); *F.T.C. v. Lalonde*, 545 F. App'x 825, 837 (11th Cir.

2013) ("The CROA prohibits unfair or deceptive advertising and business practices by credit repair

organizations.") (citing 15 U.S.C. § 1679b(b)).  The CROA defines a "credit repair organization" as

> any person who uses any instrumentality of interstate commerce or the mails to sell,
> provide, or perform (or represent that such person can or will sell, provide, or
> perform) any service, in return for the payment of money or other valuable
> consideration, for the express or implied purpose of (i) improving any consumer's
> credit record, credit history, or credit rating; or (ii) providing advice or assistance to
> any consumer with regard to any activity or service described in clause (i) . . . .

15 U.S.C. § 1679a(3)(A).

Hall does not allege Yark or Snyder acted with "the express or implied purpose of . . .

improving [her] credit record, credit history, or credit rating . . . ." *Id.*  Instead, she alleges Snyder

sought "to increase the amount of his commission" and that Yark and Snyder submitted "fraudulent

loan documentation" for the purpose of obtaining payment and making a profit.  (Doc. No. 1 at 4).

Hall fails to state a plausible claim for relief under the CROA because Yark and Snyder do not meet

the definition of a credit repair organization and Hall does not allege they offered credit repair

services.

Hall argues the CROA does not require that Yark and Snyder qualify as credit repair

organizations in order to be found liable under § 1679b(a).  That subsection, Hall notes, proscribes

certain conduct by a "person."  *Id.*  Hall also correctly notes "[i]t is a well-established principle that

when Congress uses different terms in the same statute[,] the terms are held to have different

meanings."  (Doc. No. 20 at 2).  Indeed, several courts have concluded the use of the broader term

"person" in place of the narrower term "credit repair organization" extends liability to defendants

who do not meet the definition of a credit repair organization.  *See, e.g., Poskin v. TD Banknorth, N.A.*,

687 F. Supp. 2d 530, 543 (W.D. Pa. 2009); *Bigalke v. Creditrust Corp.*, 162 F. Supp. 2d 996, 999 (N.D.

Ill. 2001); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 840 (N.D. Ill. 2007).

It does not follow, however, that Congress's use of the term "person" extends liability to

<u>anyone</u> who makes or advises a consumer to make an untrue or misleading statement about the

consumer's credit-worthiness, credit standing, or credit history.  "It [also] is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("Although the State's hypertechnical reading of the nondiscrimination clause is not inconsistent with the language of that provision examined in isolation, statutory language cannot be construed in a vacuum.").

As its name implies, the CROA seeks to address misconduct by actors who target consumers looking to improve their commercial credit.  The explicit purposes of the CROA are "(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."  15 U.S.C. § 1679(b).  It regulates the terms and conditions of contracts between credit repair organizations and consumers, and even mandates that consumers be given three business days to cancel a contract without penalty.  15 U.S.C. § 1679d.  The CROA also requires credit repair organizations to make certain disclosures before executing a contract with a consumer. 15 U.S.C. § 1679c.  Thus, the context of 15 U.S.C. § 1679b(a) implies that subsection prohibits misconduct solely in the provision of credit repair services.

Further, § 1679b(a)(1), in addition to prohibiting intentional misconduct, imposes a negligence standard on "the credit repair organization, officer, employee, agent, or other person" making an untrue or misleading statement, or counseling or advising the consumer to make an untrue or misleading statement.  15 U.S.C. § 1679b(a)(1).  If Congress in fact intended this subsection to extend liability to "any 'person,'" *Martinez*, 527 F. Supp. 2d at 840, there would be no reason to include the defined term "credit repair organization," or to reference an "officer," "employee," or "agent" of the credit repair organization.  Section 1679b(a) also prohibits a "person" from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization," or "engag[ing in] . . . a fraud or deception on any person in connection with the offer

or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(3)-(4).  When read "in their context and with a view to their place in the overall statutory scheme," the most plausible interpretation of the words "[n]o person" is that a person offering credit repair services is prohibited from engaging the specified actions.  *Davis*, 489 U.S. at 809.  While it is true the term "person" must mean something different than the term "credit repair organization," the statute provides no basis for assigning liability for actions that are not "a credit repair service."  *See Sannes v. Jeff Wyler Chevrolet, Inc.*, No. C-1-97-930, 1999 WL 33313134, at *2 (S.D. Ohio March 31, 1999).

The approach favored by Hall and the cases she cites would extend liability far beyond the targeted abuses by credit repair organizations.  *See* 15 U.S.C. § 1679(b).  Suppose Hall told an acquaintance she needed to buy a car but only had a monthly income of $349.  The acquaintance, in an attempt to help, promised to lend Hall money for the monthly payments if Hall would let the acquaintance use the car as well, and told Hall that Hall should inflate her income on the loan application to ensure she received the loan.  Under Hall's proffered reading of the statute, Hall could sue the acquaintance for violating the CROA despite the fact the acquaintance's conduct had nothing to do with repairing Hall's credit.  I conclude Hall fails to state a claim under the CROA as a matter of law.

## C.  FAIR CREDIT REPORTING ACT

Hall alleges Defendants are providers of information to credit reporting agencies and "Defendants wrongfully, improperly, and illegally reported negative information as to [Hall] to one or more Credit Reporting Agencies . . . ." (Doc. No. 23-1 at 6).  She alleges she may maintain a private cause of action under 15 U.S.C. § 1681s-2(b), recover compensatory damages pursuant to § 1681o, and punitive damages pursuant to § 1681n.  (Doc. No. 23-1 at 6).  Yark and Snyder argue Hall fails to state a claim because there is no private right of action under the FCRA for furnishing information to credit reporting agencies and Hall has not alleged she filed a formal notice of dispute. (Doc. No. 24 at 4-6).

Section 1681s-2 imposes certain duties on furnishers of information to consumer credit reporting agencies when furnishing information, § 1681s-2(a), and after receiving notice of a dispute as to the completeness or accuracy of information provided, § 1681s-2(b).  Section 1681s-2(a)(1) prohibits a furnisher of information, which Hall alleges "Defendants" to be, from providing any information if the furnisher "knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1).  The fatal problem for Hall's proposed claim, however, is that the statute expressly prohibits an individual from bringing a private cause of action under §§ 1681n or 1681o for a violation of § 1681s-2(a).  15 U.S.C. § 1681s-2(c)(1); *see also Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. 2005).

While Hall cites to § 1681s-2(b) in her complaint, she does not allege she notified a consumer reporting agency of a dispute, that Yark and Snyder received the notice pursuant to § 1681i even if Hall disputed any information Yark or Snyder provided, or that Yark and Snyder violated any duty they may have after receiving notice of a dispute.  Therefore, she cannot state a claim under § 1681s-2(b) against Yark and Snyder as a matter of law.

While Defendant Chrysler Capital did not join Yark and Snyder's opposition, as Chrysler Capital previously filed a motion to stay proceedings and compel arbitration, I conclude Hall fails to state a claim under the FCRA against Chrysler Capital for these same reasons.

### D.  OHIO CONSUMER SALES PRACTICES ACT

Hall alleges Yark and Snyder violated the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345 *et seq.*, and she is entitled to recover treble damages.  (Doc. No. 23-1 at 6-7).  As I have dismissed the claims under which Hall could establish federal-question jurisdiction and diversity jurisdiction is not present, I decline to exercise subject matter jurisdiction over Hall's state-law claim pursuant to 28 U.S.C. § 1367, and dismiss that claim without prejudice.  *See, e.g., Unit. Mine Workers v. Gobbs*, 383 U.S. 715, 726 (1966).

## V.    CONCLUSION

For the reasons stated above, Yark and Snyder's motion to dismiss, (Doc. No. 19), is granted, and Hall's motion to amend her complaint (Doc. No. 23), is denied.  Hall's Credit Reporting Organizations Act claim against Yark and Snyder is dismissed for failing to state a claim as a matter of law.  Hall's Truth in Lending Act claim is dismissed as time-barred.  Hall's motion to amend her complaint to add a claim for violation of the Fair Credit Reporting Act is denied because the proposed amendment could not withstand a Rule 12(b)(6) motion to dismiss.  I decline to exercise supplemental jurisdiction over her Ohio Consumer Sales Practices Act and dismiss that claim without prejudice.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge